**NOT FOR PUBLICATION**

```
                                    ┌─────────────────────────────┐
                                    │         FILED               │
                                    │  ┌───────────────────┐      │
                                    │  │   JUN - 1 2009     │      │
                                    │  └───────────────────┘      │
                                    │ UNITED STATES BANKRUPTCY COURT│
                                    │  EASTERN DISTRICT OF CALIFORNIA│
                                    └─────────────────────────────┘
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                               Case No. 07-14113-A-7
                                    DC No. KDG-7
LUIS ALBERTO PELAYO

            Debtor.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW

A hearing was held April 29, 2009, on the Second Application for Additional Attorney's Fees by Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP ("Klein DeNatale" or "Applicant") as attorneys for the debtor.  Objections to the application were filed by Paccar Financial Corp. ("Paccar") and by The Golden 1 Credit Union ("Golden 1").

The application requests approval of additional fees of $3,193.50 and reimbursement of expenses of $92.23 for services rendered and costs advanced from July 22, 2008, to January 21, 2009.  The application reflects that when Applicant was employed to represent the debtor in his chapter 13 case, Applicant agreed to an initial fee of $5,000 pursuant to the Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys (the "Rights and Responsibilities") filed December 7, 2007.  On August 28, 2008, Klein DeNatale filed a first application for additional attorney's fees, seeking additional attorney's fees of $5,983.50

1

and an expense reimbursement of $204.88, for services rendered and costs advanced from October 16, 2007, through July 21, 2008. The first application was approved without opposition.

The plan was confirmed on April 21, 2008. The first application for additional compensation was granted in September 2008. On December 15, 2008, the debtor filed a motion to suspend payments under the plan. That motion was granted at a hearing January 22, 2009. On February 26, 2009, the chapter 13 trustee filed a motion to dismiss the case for failure to make plan payments. On March 17, 2009, the debtor voluntarily converted his case to chapter 7. Thus, when the hearing on this fee application was held, the case had already been converted to chapter 7.

Both Paccar and Golden 1 object to the application on the grounds that the fees requested are excessive. Both creditors state that the case does not appear to be anything more than a routine chapter 13 case for which counsel would normally receive a "no look" fee of $5,000. Here, Klein DeNatale has already received authorization for compensation in excess of $11,000.

Klein DeNatale replies that of the "no look" fee of $5,000, $1,954.46 has been paid. Of the compensation allowed in the first fee application of $5,983.50, $4,812.13 has been paid.

Klein DeNatale also argues that the case is not simple or routine. Debtor owned and operated a commercial trucking business shipping cargo throughout the United States. "Debtor's business grossed over $1.4 million in 2005, over $900,000 in 2006, and about $600,000 in 2007." (Reply at paragraph 2). The debtor had total debt of about $600,000 at the time the

2

bankruptcy case was filed.  The firm also argues that a motion to
suspend payments is not part of a routine chapter 13 case and
should not be considered part of the "no look" fee.

All parties recognize the standards that guide the court in
ruling on this application.  Those standards are found at
Bankruptcy Code § 330(a)(3) and (4), which state:

> (3) In determining the amount of reasonable compensation to
> be awarded to an examiner, trustee under chapter 11, or
> professional person, the court shall consider the nature,
> the extent, and the value of such services, taking into
> account all relevant factors, including--
>
> 1. (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the
> administration of, or beneficial at the time at which the
> service was rendered toward the completion of, a case under
> this title;
>
> (D) whether the services were performed within a reasonable
> amount of time commensurate with the complexity, importance,
> and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the
> person is board certified or otherwise has demonstrated
> skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the
> customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.
>
> (4)(A) Except as provided in subparagraph (B), the court
> shall not allow compensation for--
>
> (i) unnecessary duplication of services; or

3

1

2      (ii) services that were not--

3

4      (I) reasonably likely to benefit the debtor's estate; or

5

6      (II) necessary to the administration of the case.

7      (B) In a chapter 12 or chapter 13 case in which the debtor
       is an individual, the court may allow reasonable
8      compensation to the debtor's attorney for representing the
       interests of the debtor in connection with the bankruptcy
9      case based on a consideration of the benefit and necessity
       of such services to the debtor and the other factors set
10     forth in this section.

11          In chapter 13 cases in the Eastern District of California,

12     debtors and their attorneys execute and file a "Rights and

13     Responsibilities" statement that outlines the mutual obligations

14     of debtors and counsel.  The Rights and Responsibilities is a

15     form statement.  It provides that after the case is filed,

16
       attorneys agree to provide certain legal services that are
17
       outlined in the Rights and Responsibilities.  These legal
18
       services include "prepare, file, and serve necessary
19
20     modifications to the plan which may include suspending, lowering,

21     or increasing plan payments."  Therefore, Klein DeNatale is

22     incorrect that a motion for suspension of payments is not

23     mentioned in the Rights and Responsibilities.  Indeed, a motion
24
       for suspension is clearly contemplated as a likely and routine
25
26     part of a chapter 13 case and thus is provided for in the Rights

27     and Responsibilities.

28

                                    4

Also relevant is the court's "Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases" (the "Guidelines"). The Guidelines provide at paragraph 4:

> "4. If counsel has filed an executed copy of the 'Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys," but the initial fee is not sufficient to fully compensate counsel for the legal services rendered in the case, the attorney may apply for additional fees. The court will not approve, however, additional compensation in cases in which no plan is confirmed, or for work necessary to confirm the initial plan. Further, counsel should not view the fee permitted by these Guidelines as a retainer that, once exhausted, automatically justifies a fee motion. This fee is sufficient to fairly compensate counsel for all preconfirmation services and most post-confirmation services such as reviewing the notice of filed claims, objecting to untimely claims, and modifying the plan to conform it to the claims filed. Only in instances where substantial and unanticipated post-confirmation work is necessary should counsel request additional compensation. The form application attached hereto may be used by the attorney when seeking additional fees. The necessity for a hearing on the application shall be governed by Bankruptcy Rule 2002(a)(6)."

Thus, only where "substantial and unanticipated case post-confirmation work is necessary should counsel request additional compensation."

It is with this guidance that the court reviews the compensation requested in this application. From the total fees requested of $3,193.50, $1,150 was billed for fee applications and $1,913.50 was billed for the motion to suspend payments. $74 was for case administration (a preparation of change of address for the debtor) and $55 was for claims administration (an

5

exchange of e-mails with counsel for Golden 1).

The objecting creditors are correct that the compensation requested is excessive and to some extent fails to comply with the requirements of § 330 of the Bankruptcy Code.

Generally, there are a number of entries for services rendered by an attorney that should have been rendered by a competent paralegal or secretary.  For instance, the entry by JLE of .3 hours for preparing a notice of change of address is excessive.  Also in that category of work that was performed by an attorney that could reasonably have been performed by a paralegal are the preparation of notices of hearings for which JLE billed .7 hours on August 1, 2008 and CMC billed .5 hours on December 1, 2008.

More generally, the time spent in preparing the first application for compensation is excessive.  At $1,150, it is more than twenty percent of the initial "no look" fee.  Additionally, it is almost twenty percent of the amount awarded in the first fee application.  Further, the motion to suspend payments resulted in a request for compensation of $1,913.50.  Yet, such a motion is contemplated in the initial $5,000 "no look" fee.

Further, 7.4 hours were incurred directly by JLE and CMC in preparation of the actual motion to suspend payments, and this does not include any of the various e-mails to and from counsel

6

and the client.  JLE billed at between $155 and $185 per hour at this time, and CMC billed at $210 per hour.  This is simply too much money and too much time for a motion to suspend payments that as stated above should have been included in the original "no look" fee.  The basic documents that counsel prepared for this motion were in fact very straightforward.  The motion to suspend payments is two pages long, the declaration of the debtor is two pages long, and the notice of hearing is two pages long.

The long and the short of it is that the requested fees are simply not reasonable in light of the time spent on the services and the rate charged for the services.  As set forth above, to a large extent the services were not performed within a reasonable amount of time commensurate with the complexity, importance and nature of the task at hand.

For all the foregoing reasons, the requested fees of $3,193.50 are reduced to $1,000.  Reimbursement of expenses is allowed in the amount of $92.23 as requested.  A separate order will issue.

DATED: June /__, 2009.

_____
WHITNEY RIMEL, Judge
United States Bankruptcy Court

7

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA        )
                           )  ss.
COUNTY OF FRESNO           )

     I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On June _/_, 2009, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Leonard K. Welsh, Esq.
Jacob L. Eaton, Esq.
KLEIN, DeNATALE, GOLDNER, COOPER,
   ROSENLIEB & KIMBALL
4550 California Ave., Second Floor
Bakersfield, California 93309

Glen Dresser, Esq.
LAW OFFICES OF GLELN DRESSER
12650 Riverside Drive, Suite 100
North Hollywood, CA 91607

Roxanne T. Daneri, Esq.
555 University Avenue, Suite 114
Sacramento, CA 95825

Office of the United States Trustee
2500 Tulare Street
Suite 1401
Fresno, California 93721

     I certify (or declare), under penalty of perjury, that the foregoing is true and correct.  Executed on June _/_, 2009, at Fresno, California.

_____
Kathy Torres, PLS

8